Antwon DONALDSON, b/n/f Debra
**Donaldson, and Debra Donaldson,**
**Appellants–Plaintiffs,**

v.

**INDIANAPOLIS PUBLIC TRANS-**
**PORTATION CORPORATION,**
**Appellee–Defendant.**

No. 29A04–9212–CV–453.

Court of Appeals of Indiana,
Fourth District.

April 26, 1994.

---

⚷76

C. Dennis Wegner, Jeffrey K. Orr, C. Dennis Wegner & Associates, Indianapolis, for appellants.

William Diehl, Edwin L. Gagnon, Byrum, Gagnon & Diehl, Indianapolis, for appellee.

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiffs–Appellants Antwon Donaldson, b/n/f Debra Donaldson, and Debra Donaldson (hereinafter referred to by forename or collectively as "Donaldson") appeal a judgment in favor of Indianapolis Public Transportation Corporation (IPTC).

We affirm.

### ISSUES

Donaldson raises the following consolidated and restated issues for our review:

1. Whether the trial court abused its discretion in determining that a witness offered as an expert was not qualified to testify.

2. Whether the trial court committed reversible error in giving an instruction on the statutory duty of a pedestrian.

3. Whether the trial court erred in admitting a police report offered by IPTC.

IPTC raises the following issue:

1. Whether an award of damages, in the form of costs and attorney fees, is proper.

### FACTS AND PROCEDURE

On October 15, 1983, Maria Anderson was operating an IPTC bus in Indianapolis. As she drove down a city street, she observed people waiting at a curb to board the bus. She also saw boys playing on the sidewalk around a pushcart but did not see anyone in or on the cart. The bus had almost come to a complete stop when Anderson heard something contact the side of the vehicle. She completed her stop and looked in the sideview mirror and saw eight year old Antwon in the street between the curb and the rear tire of the bus. Antwon sustained severe injuries to his abdominal region in the accident.

Donaldson filed a complaint against Anderson and IPTC in Marion County. The complaint alleged that Anderson was negligent in the operation of the bus and that Antwon's injuries occurred when the pushcart suddenly veered off the sidewalk and hit IPTC's bus. A jury trial was held in Marion County Superior Court, Room 6. After the close of all the evidence, the court granted Anderson and IPTC's motion for judgment on the evidence.

Donaldson appealed the trial court's judgment. In a memorandum decision, *Donaldson v. Indpls. Public Trans. Corp.* 523 N.E.2d 774 (Ind.App.1988), this court held that the trial court erred in granting the judgment on the evidence because there was more than a scintilla of evidence from which the jury could have inferred that Anderson did not exercise reasonable care in operating IPTC's bus.

Following the reversal by this court, the case was venued to the Hamilton Circuit Court for a jury trial.[1] At the completion of the trial, the jury returned a verdict in favor of IPTC. Donaldson now appeals.

### DISCUSSION AND DECISION
#### I. TESTIMONY OF MOTT

At trial, a number of witnesses testified that Anderson could not have known that the pushcart carrying Antwon would leave the twenty foot wide sidewalk. Other witnesses testified that the erratic movements of the pushcart as it progressed down the sidewalk

1. Prior to trial, the court granted Donaldson's motion for voluntary dismissal of Anderson as a party defendant.

toward the bus should have put Anderson on notice that the cart and its passenger would end up in the street.

Donaldson called Craig Woodall, IPTC's coordinator of training and safety, as a witness to talk about the training and safety procedures of IPTC's drivers. Woodall, who testified in response to a subpoena, acknowledged that some of the materials used in training came from the National Safety Council. A driver booklet from the Council was placed into evidence. Woodall also testified that IPTC used the Council for "both training materials and also for operator recognition for driving achievements." (R. 776). On cross-examination, Woodall testified that there was no National Safety Council rule that required a driver to stop every time she observed children on a sidewalk.

Donaldson called an accident reconstructionist who testified that his reconstruction of the accident established that Anderson could have avoided contact with the pushcart. Donaldson also called Sye Mott, a safety instructor familiar with National Safety Council rules. Donaldson attempted to qualify Mott as an expert witness on Council standards and their applicability to the actions of Anderson at the time the pushcart and bus collided. The trial court sustained IPTC's objection to the expert qualifications of Mott. The court also sustained IPTC's objection to any expert opinion from Mott about National Safety Council rules and Anderson's compliance therewith. The trial court additionally held that Council standards were not relevant to the case.

Donaldson contends the trial court committed error when it did not allow Mott to testify about National Safety Council rules. Donaldson argues that he was prejudiced by the trial court's ruling because Mott's testimony was intended to rebut Woodall's cross-examination testimony.

■ The trial court has broad discretion in determining the propriety of expert testimony. *Summers v. State* (1986), Ind.App., 495 N.E.2d 799, 802 *reh'g denied, trans. denied.* The trial court's decision can only be reversed for an abuse of discretion. An abuse of discretion occurs when the trial court's action is clearly against the logic and

effect of the facts and circumstances before the court or the reasonable deductions to be drawn therefrom. *Dorgan v. Dorgan* (1991), Ind.App., 571 N.E.2d 325, 326. An important factor in determining whether the trial court committed reversible error in excluding testimony is the effect of the exclusion upon the proponent's case; an erroneous ruling will not be reversed unless it caused prejudice to the proponent. *Wisehart v. State* (1985), Ind., 484 N.E.2d 949, 957, *cert. denied* 476 U.S. 1189, 106 S.Ct. 2929, 91 L.Ed.2d 556 (1986). Even though a trial court's reason for excluding a witness's testimony is erroneous, the ruling will still be upheld if it can be sustained on any other grounds. *Santini v. Consolidated Rail Corporation* (1987), Ind.App., 505 N.E.2d 832, 835.

■ During direct examination, when the trial court rules that a witness may not testify, the proponent of the excluded testimony must make an offer of proof to preserve the ruling for appellate review. *State v. Fischer* (1986), Ind.App., 493 N.E.2d 1265, 1267, overruled on other grounds by *Bohall v. State* (1989), Ind., 546 N.E.2d 1214. "An offer of proof provides the appellate court with the scope and effect of the area of inquiry and the proposed answers, in order that it may consider whether the trial court's ruling excluding the evidence was proper." *Tyson v. State* (1993), Ind.App., 619 N.E.2d 276, 281, *trans. denied.* Thus, "the offer of proof must demonstrate the substance, purpose, relevancy, and materiality of the excluded evidence in order to enable the appellate court to determine on appeal whether the exclusion was proper." *Id.*

■ In the present case, Donaldson made a partial offer of proof by asking Mott if he would testify about National Safety Council rules and Anderson's actions. He also asked whether Council rules were taught in defensive driving schools. However, Donaldson did not ask about specific rules that arguably applied, nor did he elicit specific testimony comparing Anderson's actions with the requirements of specific rules. While the offer was sufficient to establish the relevancy of Mott's testimony, it was not sufficient to establish the materiality thereof. Therefore,

we have no way of determining whether Donaldson was prejudiced by the trial court's ruling.[2] Thus, we cannot say that the trial court committed reversible error in excluding Mott's testimony.

## II. THE TRIAL COURT'S INSTRUCTION

Donaldson contends the trial court erred in giving Jury Instruction No. 4, which read:

I.C. § 9–4–1–87, *Pedestrians; right-of-way; marked or unmarked crosswalks; uncontrolled intersections.*

(b) No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close as to constitute an immediate hazard.

If you find from a fair preponderance of the evidence in this case at the time of the accident in controversy Antwon Donaldson failed to obey the provisions of this statute without excuse or justification, then such conduct on the part of Antwon Donaldson will constitute contributory negligence. He may excuse or justify the violation by sustaining the burden of showing the violation occurred despite his exercise of that degree of care which would ordinarily be exercised by a child of the same age, experience, intelligence and education level.

(R. 1114). Donaldson argues that the instruction is erroneous because it is unsupported by any evidence to indicate that he voluntarily left the sidewalk.[3]

■■ The giving of jury instructions is a matter primarily entrusted to the discretion of the trial court. *Underly v. Advance Mach. Co.* (1993), Ind.App., 605 N.E.2d 1186, 1190, *reh'g denied, trans. denied* (citing *Wielgus v. Lopez* (1988), Ind.App., 525 N.E.2d 1272, 1274). The decision will not be disturbed on review absent an abuse of discretion. *Id.* (citing *Weller v. Mack Trucks, Inc.* (1991), Ind.App., 570 N.E.2d 1341, 1343). In reviewing a claim that trial evidence was insufficient to support the giving of an instruction, we may look only to that evidence most favorable to appellee and any reasonable inferences to be drawn therefrom. *Id.* (citing *Antcliff v. Datzman* (1982), Ind.App., 436 N.E.2d 114, 122).

An instruction similar to Jury Instruction No. 4 was reviewed in *Kurowsky v. Deutsch* (1989), Ind., 533 N.E.2d 1210.[4] In *Kurowsky*, our supreme court held that "a court in deciding how to instruct a jury, [must] first consider whether the statute is such that a violation of it would be negligence in any context." 533 N.E.2d at 1212. The court further held that:

In such cases we think it would be proper to instruct the jury that if they find from a fair preponderance of the evidence that [the actor] violated the provisions of the statute, he was guilty of negligence, unless they further find from a fair preponder-

2. Common experience, however, indicates that Donaldson was not prejudiced by the lack of opportunity to respond to Woodall's cross-examination testimony. On cross-examination, Woodall stated that he did not believe that National Safety Council rules required a vehicle operator to come to a stop every time she observed children on a sidewalk. This is the statement which Donaldson was attempting to respond to through Mott.

The common experience of the jurors would have apprised them of the fact that there is no requirement that vehicle operators must stop every time children are on a sidewalk. Such a requirement would bring urban traffic to a standstill.

Mott's testimony would have likely established that a vehicle driver should always be cautious when children are nearby. Woodall acknowledged the importance of caution in his testimony.

3. Donaldson also argues that the statute did not apply to him because he was not a pedestrian. He further argues that the instruction impermis-

sibly shifted the burden of proof on the subject of contributory negligence. These arguments were not made to the trial court and are therefore waived. *Nehi Beverage Co., Inc. v. Petri* (1989), Ind.App., 537 N.E.2d 78, 82, *trans. denied.*

4. The applicable statutes in *Kurowsky* were IND. CODE 9–4–1–94 (now repealed) and I.C. 9–4–1–84 (now repealed). I.C. 9–4–1–94 provided that "[e]very person riding a bicycle upon a roadway shall have all of the rights and all of the duties under the provisions of this chapter [traffic laws] applicable to those regulations of this article, and except as to those provisions of this chapter which by their nature can have no application." I.C. 9–4–1–84 provided that "[t]he driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right-of-way to all vehicles approaching on said highway."

ance of the evidence that compliance was impossible or noncompliance was excusable.

*Id.* at 1212–1213 (quoting *Larkins v. Kohlmeyer* (1951), 229 Ind. 391, 98 N.E.2d 896, 900).

■ Jury Instruction # 4 quotes I.C. 9–4–1–87 (now I.C. 9–21–17–5 (1993)), which requires a party to refrain from entering into the path of a vehicle which is so close as to constitute an immediate hazard. The statute is such that a violation of it constitutes negligence in any context. The instruction then explains that the jury may find an excuse for the violator's actions. Under the reasoning of *Kurowsky* and within the scope of Donaldson's contemporaneous objection, the instruction was correct.

### III. ADMISSION OF THE POLICE REPORT

Donaldson contends the trial court erred in allowing IPTC to enter two police reports written by Indianapolis Police Officer Kay Gregory into evidence. The police report contained a diagram of the accident and the statements of various alleged witnesses to the accident.

In *State v. Edgman* (1983), Ind.App., 447 N.E.2d 1091, we considered the propriety of using a police report as evidence. In *Edgman*, the trial court refused to allow the State to present a police report as evidence. In affirming the trial court, we held that the report, which contained the statements of alleged witnesses to an accident, was inadmissible as hearsay. 447 N.E.2d at 1103. We further held that the report failed to meet the requirements of the business record exception to the hearsay rule. *Id.* In so doing, we noted the following statement by our supreme court:

> The heart of the rule then is the requirement that the observation, reporting, and

the recording of the facts *all* be made by someone in the regular course of the business. Without this there is no assurance of accuracy and reliability of the fact which justifies the admission of the record as evidence of the facts asserted therein. (emphasis in original).

*Id.* at 1103–1104 (quoting *Wells v. State* (1970), 254 Ind. 608, 616, 261 N.E.2d 865, 870).

■ In the present case, Donaldson failed to make a specific objection on the record at the time the police report and diagram were offered at trial. An objection to allegedly improper evidence is required at the critical point when it is offered. *Lenoir v. State* (1987), Ind., 515 N.E.2d 529. Failure to make a timely objection waives the alleged error. *Id.*

■ Even if a proper hearsay objection to the report had been made, we would not reverse. The majority of the statements made in the report and the diagram contained therein were cumulative of evidence already in the record. Reversible error cannot be predicated upon a trial court's admission of evidence which is merely cumulative. *Edgman,* 447 N.E.2d at 1105. The remaining statement of Donaldson's brother was admissible for impeachment purposes to show that the brother's trial testimony conflicted with statements made to Officer Gregory at the time of the accident. *See Samuels v. State* (1978), 267 Ind. 676, 372 N.E.2d 1186, 1187.

### IV. AWARD OF COSTS AND ATTORNEY FEES

IPTC contends that this court should award costs and attorney fees as damages pursuant to either I.C. 34–1–32–1(b) (1993)[5] or Ind.Appellate Rule 15(G).[6] IPTC argues that Donaldson should have realized even before he filed suit that his case was frivolous.

---

**5.** I.C. 34–1–32–1(b) states:

In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if it finds that either party:
(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
(2) continued to litigate the action or defense after the party's claim or defense clearly be-

came frivolous, unreasonable, or groundless; or
(3) litigated the action in bad faith.

**6.** App.R. 15(G) provides that "[i]f the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten per cent (10%) upon the judgment, in money judgments, and in other cases in the discretion of

■ "In general, a discretionary award of damages has been recognized as proper when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Orr v. Turco Mfg. Co., Inc.* (1987), Ind., 512 N.E.2d 151, 152. However,

in exercising its discretionary power to award damages on appeal, an appellate tribunal must use extreme restraint. Notwithstanding the harmful delay occasioned by crowded dockets and limited resources, we cannot fail to recognize that the imposition of punitive sanctions does have significant negative consequences. It may punish, and will deter, the proper exercise of a lawyer's professional responsibility to argue for modification or reversal of existing law. It will have a chilling effect upon the exercise of the right of appeal. It will discourage innovation and inhibit the opportunity for periodic reevaluation of controlling precedent.

*Id.*

■ In the present case, the testimonies of the witnesses to Donaldson's accident were in conflict. Despite the conflict, the first trial ended in an erroneous grant of a judgment on the evidence in favor of IPTC. The erroneous grant necessitated the first appeal and the second trial. While Donaldson did not prevail in this appeal, he did present plausible arguments against the trial court's evidentiary rulings.

There is no indication of bad faith, frivolity, harassment, vexatiousness, or purpose of delay in Donaldson's treatment of this case. Accordingly, punitive sanctions are not justified.

### SUMMARY

The judgment of the trial court is affirmed and IPTC's request for an award of damages is denied.

CHEZEM and STATON, JJ., concur.

the court; and the court shall remand such cause

for execution."