2004 SD 21

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Joshua SCHROEDER, Defendant and Appellant.**

**No. 22895.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 2004.

Decided Feb. 18, 2004.

Lawrence E. Long, Attorney General, Patricia Archer, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Donald E. Covey, Winner, South Dakota, Attorney for defendant and appellant.

ZINTER, Justice.

[¶ 1.] Joshua Schroeder was found guilty of possession of a controlled substance. His conviction was based solely upon the presence of methamphetamine in his urine. He contends that his conviction should be reversed because there was no other physical evidence that he possessed methamphetamine. We affirm.

**Facts and Procedural History**

[¶ 2.] A highway patrol officer stopped a vehicle in which Schroeder was a passenger. After receiving consent, the officer searched the vehicle and found a digital scale under the front passenger seat. Both the driver and Schroeder denied owning the scale. White residue on the scale field-tested positive for amphetamines. Later in jail, the driver and Schroeder submitted to urinalysis. Schroeder's test revealed 28.0 micro-grams/ml of methamphetamine in his urine. Schroeder was ultimately charged with possession of a controlled substance, ingestion of a controlled substance, and possession of drug paraphernalia.

[¶ 3.] Schroeder did not dispute the results of the urinalysis. In fact, he stipulated to the facts.[1] Schroeder also stipulated to the following procedural resolution of the possession of a controlled substance charge:

(1) Each Defendant is charged with one count of Possession of Controlled Substance (Methamphetamine), in violation of SDCL 22–42–5. The State agrees that this charge is based solely upon the facts as set forth in the ... "Joint Stipulation of Facts" and is not based upon any other substance or instrumentality. Stated otherwise, this charge is based upon the presence of methamphetamine in each Defendant's urine.

(2) The ... "Joint Stipulation of Facts" shall be submitted to the Court in a Trial to the Court, and no other facts shall be submitted for the Court's consideration. The parties shall be free to argue to the Court, at hearing, the effect that the stipulated facts have in deter-

---

1. They stipulated that:
   (1) At the time charged in the Information, the Defendants were traveling together in an automobile in Tripp County.
   (2) The parties stipulate and agree that the Highway Patrol Officers had probable cause to stop their car.
   (3) The parties stipulate and agree that during the stop of the car, the Highway Patrol Officers developed probable cause to collect a urine specimen from each Defendant, which specimen was given voluntarily by each Defendant a short time after the initial stop.
   (4) The urine samples were sent to the State Health Lab in Pierre, by proper means of transmittal. The parties stipulate and agree that chain of custody is not contested.
   (5) The urine samples were tested at the State Health Lab in Pierre, and as to each Defendant it was determined that methamphetamine was present, to wit: As to [the driver], there were 22.3 micrograms/ml of methamphetamine present in his urine. As to Defendant Schroeder, there were 28.0 micrograms/ml of methamphetamine present in his urine. The parties stipulate and agree that the lab results as stated herein may be accepted as conclusive.
   (6) The parties stipulate and agree there is no evidence that either Defendant ingested methamphetamine within Tripp County or, for that matter, within the State of South Dakota.

mining the guilt or innocence of each Defendant. The Defendants shall maintain their individual pleas of Not Guilty in such hearing, and the Court shall render its verdict based upon the stipulated evidence after the parties shall have argued the case.

[¶ 4.] Based on these stipulations, the court found Schroeder guilty of possession of a controlled substance. Schroeder raises the following issue on appeal:

**Whether a positive urinalysis, revealing the presence of a controlled substance in Defendant's urine, is sufficient to support a possession conviction.**

[¶ 5.] The answer to this question requires statutory construction. "Construction of a statute is a question of law and is, therefore, fully reviewable without deference to the interpretation made by the trial court." Delzer v. Penn, 534 N.W.2d 58, 61 (S.D.1995) (citing *In re Estate of Steed,* 521 N.W.2d 675, 680 (S.D. 1994); *State v. French,* 509 N.W.2d 693, 695 (S.D.1993); *Sander v. Geib, Elston, Frost Pro. Ass'n,* 506 N.W.2d 107, 121 (S.D.1993)).

[¶ 6.] Schroeder's conviction was based solely upon the presence of methamphetamine in his urine. On appeal, Schroeder asserts that instead of prosecuting him for ingestion, a misdemeanor, the State prosecuted him for possession "to seek convic-tion of [a] felony offense."[2] Schroeder also argues that "[t]he ultimate fact of one offense [ingestion] cannot be used to prove the categorically different ultimate facts of another offense [possession]." Schroeder finally argues that he could not "possess," "control," or "exercise dominion over" the methamphetamine that was in his body. He therefore concludes that his positive urinalysis, with no other corroborating physical evidence, was insufficient to prove possession. We disagree.

[¶ 7.] Although we have previously mentioned this issue, we have not decided it. *See State v. Hanson,* 1999 SD 9, 588 N.W.2d 885; *State v. Blakey,* 2001 SD 129, 635 N.W.2d 748. Furthermore, since those decisions, we have not had occasion to consider how a 2001 amendment of the definition of a "controlled substance" affects the question.[3] Because the 2001 amendment appears to have been prompted by one of those cases, we begin by discussing them.

[¶ 8.] This Court first addressed the use/possession issue in *Hanson, supra.* Hanson was a passenger in a vehicle in which officers found a marijuana seed and leaf, along with a pipe containing burned marijuana residue. Like Schroeder, Hanson argued that her positive urinalysis was insufficient to establish possession. She contended that a positive urine test could not, by itself, constitute possession of marijuana. *Id.* ¶ 42. However, we declined to

---

**2.** We cannot determine the accuracy of this assertion from the record. The record does not reflect any disposition of the charges of possession of drug paraphernalia and ingestion. The State's brief states that: "The misdemeanor charges of ingestion and possession of drug paraphernalia were apparently not presented to Judge Wilbur. Notwithstanding Count 2 of the Information [charging ingestion], the court ruled that Defendant is 'not charged with violation of SDCL 22–42–15 [ingestion].'" Schroeder's brief does not address the issue at all. We find no dismissal of these two remaining charges in the record.

**3.** Although Schroeder points to other jurisdictions' analysis of this issue, we address the issue under our Legislature's 2001 statutory framework.

"decide the issue of what if any further additional proof beyond the test result [was] required to establish possession ... as [Hanson] was not charged with possession of marijuana in her body but possession of the marijuana found in the car." *Id.* ¶ 43. Nevertheless, we noted the closely related "ingestion precludes possession" argument by mentioning the historic dichotomy between the use and possession of a controlled substance:

> Defendant's argument is based upon the historic dichotomy between "possession" and "use" in the criminal law. Defendant argues that when there is a specific statute concerning ingestion, i.e. "use," a defendant cannot be convicted of a separate offense of "possession." This issue has not been addressed in South Dakota. In this instance there is no need for this Court to do so, because while there is circumstantial evidence of ingestion, there is also the evidence of the actual presence of marijuana in the form of a leaf, residue and a pipe.

*Id.* n. 5 (internal citations omitted).

[¶ 9.] There is still no need to decide this related issue of whether an ingestion statute precludes a conviction for possession when the only evidence is a positive urinalysis. We need not reach that question in this case because Schroeder concedes that "[t]he sole issue before this Court is the sufficiency of the evidence[.]" In fact, Schroeder acknowledges that although "it may appear that [he] argues the dichotomy of 'use' versus 'possession,'" his argument is "really much more simple." He only questions whether the presence of methamphetamine in his urine, with no corroborating physical evidence, is sufficient to prove possession.

[¶ 10.] Schroeder's sufficiency of the evidence question has also been mentioned by this Court. In *Blakey*, the defendant was charged with possession of a controlled substance after a urinalysis indicated the presence of methamphetamine. He also argued the sufficiency of the evidence question. *Blakey*, 2001 SD 129, 635 N.W.2d 748. The *Blakey* trial court concluded that the mere presence of a controlled substance in urine did not establish a prima facie case of unauthorized possession. *Id.* ¶ 2. Although we reversed on a different issue, we did acknowledge the sufficiency of the evidence question in a footnote:

> We reserve for a time when it is properly presented the issue of whether this state will follow the majority rule in *State v. Griffin*, 220 Wis.2d 371, 584 N.W.2d 127, 131 (Wis.Ct.App.1998) that a urinalysis result alone is not sufficient evidence to sustain a conviction for possession of a controlled substance.

*Id.* ¶ 8 n*.

[¶ 11.] The sufficiency of the evidence issue is now properly before us. However, since *Hanson* and *Blakey*, the definition of a "controlled substance" was amended. Under the prior definition in SDCL 22–42–1(1)(1998),[4] a controlled drug was merely "a drug or substance, or an immediate precursor of a drug or substance, listed in Schedules I though IV[.]"[5] In apparent response to *Hanson*, the Legislature amended that definition in 2001 to provide that: "[t]he term includes *an altered state*

---

4. *Blakey* was decided in 2001. The events underlying that decision took place in the fall of 2000. Therefore, this Court considered the 1998 version of SDCL 22–42–1(1).

5. Schedules I through IV are lists of controlled drugs and substances found in SDCL ch 34–20B.

of a drug or substance listed in Schedules I through IV *absorbed into the human body* [.]" SDCL 22–42–1(1)(2001) (emphasis added).

[¶ 12.] We presume that the Legislature changed the wording of the statute for a reason. *See Peterson v. Burns,* 2001 SD 126, ¶ 30, 635 N.W.2d 556, 567–68. "When an amendment is passed, it is [often] presumed the legislature intended to change existing law." *South Dakota Subsequent Injury Fund v. Federated Mut. Ins., Inc.,* 2000 SD 11, ¶ 18, 605 N.W.2d 166, 170 (citations omitted). However, amendments can also clarify existing law. *Olson v. Pulaski Common Sch. Dist. of Faulk County,* 77 S.D. 416, 419, 92 N.W.2d 678, 680 (1958); *In re Farmers State Bank of Viborg,* 466 N.W.2d 158, 160 (S.D.1991). To determine the legislative purpose of an amendment, "we consider the time and circumstances surrounding the enactment of the amendment." *Id.* at 160–61.

[¶ 13.] In this case, we agree with the State that "[i]t is reasonable to infer that the Legislature was responding to the questions raised in *Hanson* and elsewhere (including the court decisions in other jurisdictions) regarding the issue of possession of a drug in the body." This inference is clearly justified by the title of the bill adopting the change, which was entitled: "An Act to include in certain drug offenses the altered state of a controlled drug or substance or marijuana once absorbed into the human body." 2001 SD Laws ch 116. We also observe that this amendment was adopted shortly after our decision in *Hanson.*

[¶ 14.] Giving plain meaning to this amended definition of "controlled drug or substance," Schroeder's argument regarding a legal distinction between "use" and "possession" is unpersuasive. Under the new statutory framework, SDCL 22–42–5 prohibits any person from "knowingly possess[ing] *a controlled drug or substance* [.]" (Emphasis added.) Reading this possession statute together with the amended definition of a controlled drug, possession may now occur if a person knowingly possesses "an altered state of a drug or substance absorbed into the human body." SDCL 22–42–1(1), 22–42–5. We therefore agree with the trial court that "[t]his recent amendment to SDCL 22–42–1(1) clearly expresses the intent of the South Dakota Legislature to reject the historic dichotomy between 'possession' and 'use' in the criminal law." It also "permit[s] a defendant to be convicted of 'unauthorized possession' of a controlled drug or substance when the only . . . evidence is from the ingested or absorbed unauthorized [substance in] the defendant's body."

[¶ 15.] We affirm.

[¶ 16.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.